**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| Nadja Yang, | ) | CASE NO. 2:26-cv-12839-SKD-KGA |
| | ) | |
| Plaintiff, | ) | HON. JUDGE SUSAN K. DECLERCQ |
| | ) | |
| v. | ) | HON. MAGISTRATE JUDGE |
| | ) | KIMBERLY G. ALTMAN |
| Educational Computer Systems, Inc., | ) | |
| et al. | ) | **Defendants, Denise Truesdell,** |
| | ) | **Timothy G. Lynch, Sean Fritz, and** |
| Defendants. | ) | **Kathleen Chapman's Motion to** |
| | ) | **Dismiss Plaintiff's Complaint** |
| | ) | |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, Denise Truesdell, Timothy G. Lynch, Sean Fritz, and Kathleen Chapman move to dismiss Plaintiff's complaint on the grounds that, even assuming Plaintiff's factual allegations are true, it fails to state a claim upon which relief may be granted.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Lisa D. Starks*
Lisa D. Starks (P-78128)
**Barnes & Thornburg LLP**
171 Monroe Ave. NW, Ste. 1000
Grand Rapids, MI 49503
Phone: (260) 425-4627
Facsimile: (260) 424-8316
Lisa.Starks@btlaw.com

*/s/ Robert C. Folland*
Robert C. Folland (Ohio Bar No. 0065728)
**Barnes & Thornburg LLP**
41 S. High St., Ste. 3300
Columbus, OH 43215
Phone: (614) 628-0096
Facsimile: (614) 628-1433
Rob.Folland@btlaw.com
*Attorneys for Defendants, Denise Truesdell, Timothy G. Lynch, Sean Fritz, and Kathleen Chapman*

# ISSUES PRESENTED

1. Whether Count II states a claim for willful violation of the automatic stay under 11 U.S.C. § 362(k) against Denise Truesdell and Timothy Lynch individually, where the complaint pleads no act by either defendant after the petition to collect a claim or to exercise control over estate property, alleges that Ms. Yang was told within hours of her only conversation with the General Counsel's office that she could register, and identifies no injury beyond the costs of her own correspondence and of this suit.

2. Whether Count III states a claim under 42 U.S.C. § 1983 against Sean Fritz individually for violating 11 U.S.C. § 525(a), where the only conduct alleged is that Fritz told Ms. Yang she could register on pre-payment for the coming term, where Ms. Yang identifies no decision holding that course registration is a "license, permit, charter, franchise, or other similar grant" or that a pre-payment term for future services is discrimination under § 525(a), and where Fritz is entitled to qualified immunity.

3. Whether Count IV states a claim for conspiracy to violate 42 U.S.C. § 1983 for action relating to a bankruptcy proceeding and alleged violations of the bankruptcy proceeding's automatic stay, and whether a § 1983 claim is implicitly precluded by the Bankruptcy Code because of the "comprehensive enforcement scheme" it provides.

4. Whether Count V states a claim under M.C.L. § 445.252 for unfair collection practices, where the alleged misrepresentation is that a debt appeared as a "loan" on the account, which could have different implications in a bankruptcy proceeding that had not yet been initiated.

**<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>**

11 U.S.C. § 362(k)

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000)

*In re Bello*, 612 B.R. 389 (Bankr. E.D. Mich. 2020)

*Archer v. Macomb Cnty. Bank*, 853 F.2d 497 (6th Cir. 1988)

11 U.S.C. § 525(a)

*Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104 (4th Cir. 2006)

*Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477 (6th Cir. 1998)

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)

*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021)

42 U.S.C. § 1983

*Health and Hospital Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023)

*City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005)

*Zimmerman v. Bellows*, 988 F.Supp.2d 1026 (D. Minn. 2013)

M.C.L. § 445.252

*Gamby v. Equifax Info. Servs., LLC*, 462 Fed.Appx. 552 (6th Cir. 2012)

# TABLE OF CONTENTS

**Page**


I. PLAINTIFF'S ALLEGATIONS ........ 1

II. LAW & ARGUMENT ........ 6

A. Standard of Review ........ 6

B. Ms. Yang has failed to plausibly state a claim upon which relief can be granted. ........ 7

1. The complaint pleads no violation of the automatic stay, no willful act by Truesdell or Lynch, and no injury (Count II). ........ 7

a. No violation of the automatic stay occurred. ........ 8

b. Neither Truesdell nor Lynch committed a willful act. ........ 11

c. The complaint pleads no injury or basis for punitive damages. ........ 12

2. The University did not violate § 525(a), and Fritz is entitled to qualified immunity regardless (Count III). ........ 13

a. Registration for a coming term is not a "license, permit, charter, franchise, or other similar grant." ........ 14

b. Fritz is entitled to qualified immunity. ........ 17

3. The Bankruptcy Code's "comprehensive enforcement scheme" precludes Ms. Yang's § 1983 claim (Count IV). ........ 19

4. Ms. Yang has failed to state a claim for prohibited collection practices (Count V). ........ 22

III. CONCLUSION ........ 25

# INDEX OF AUTHORITY

**Page(s)**

**Cases**


*Adams v. Seterus, Inc.*,
2019 WL 4735157 (E.D. Mich. Sept. 27, 2019) ....24

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ....20

*Andrews Univ. v. Merchant (In re Merchant)*,
958 F.2d 738 (6th Cir. 1992) ....10, 11, 16, 17

*Archer v. Macomb Cnty. Bank*,
853 F.2d 497 (6th Cir. 1988) ....8, 12, 13

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ....17, 18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....6

*Ayes v. U.S. Dep't of Veterans Affairs*,
473 F.3d 104 (4th Cir. 2006) ....14

*In re Banks*,
253 B.R. 25 (Bankr. E.D. Mich. 2000) ....10

*State of Tex. ex rel. Bd. of Regents of Univ. of Tex. Sys. v. Walker*,
142 F.3d 813 (5th Cir. 1998) ....19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....6, 7, 12

*In re Bello*,
612 B.R. 389 (Bankr. E.D. Mich. 2020) ....11, 13

*Bishop v. Lucent Technologies, Inc.*,
520 F.3d 516 (6th Cir. 2008) ....6

*Caldeira v. Cnty. of Kauai*,
866 F.2d 1175 (9th Cir. 1989) ....21

*Chitty v. Nye Cnty. Sheriff's Dep't*,
46 Fed.Appx. 526 (9th Cir. 2002)....................................................................22

*City of Chicago v. Fulton*,
592 U.S. 154 (2021)....................................................................................8, 9

*City of Rancho Palos Verdes, Cal. v. Abrams*,
544 U.S. 113 (2005)........................................................................................20

*In re Coats*,
168 B.R. 159 (Bankr. S.D. Tex. 1993) ......................................................19, 22

*Conrad v. Mich. Dep't of Corr.*,
1992 WL 547168 (W.D. Mich. Oct. 5, 1992) ..................................................21

*Crawford v. Tilley*,
15 F.4th 752 (6th Cir. 2021) ............................................................................18

*Droz v. McCadden*,
580 F.3d 106 (2d Cir. 2009) .............................................................................21

*Duffey v. Dollison*,
734 F.2d 265 (6th Cir. 1984) ......................................................................16, 18

*Elter v. Great Lakes Higher Educ. Corp. (In re Elter)*,
95 B.R. 618 (Bankr. E.D. Wis. 1989)..........................................................15, 16

*Evans v. Mercedes Benz Fin. Servs., LLC*,
2011 WL 2936198 (E.D. Mich. July 21, 2011)....................................................7

*Gamby v. Equifax Info. Servs., LLC*,
462 Fed.Appx. 552 (6th Cir. 2012)....................................................................24

*In re Gammons*,
No. 12-10362, Adv. No. 19-01017, 2020 WL 1547154 (Bankr.
D.R.I. Mar. 31, 2020)........................................................................................11

*In re Goldrich*,
771 F.2d 28 (2d Cir. 1985) ...............................................................................15

*Golliday v. City of Benton Harbor (In re Golliday)*,
216 B.R. 407 (Bankr. W.D. Mich. 1998) ...........................................................16

*Granader v. Public Bank*,
417 F.2d 75 (6th Cir. 1969) ....................................................................3

*Grine v. Chambers (In re Grine)*,
439 B.R. 461 (Bankr. N.D. Ohio 2010).........................................................7, 8

*Haines v. Kerner*,
404 U.S. 519 (1972)....................................................................................7

*Hamby v. Fouts (In re Hamby)*,
646 B.R. 865 (Bankr. N.D. Ga. 2022) ..........................................................12

*Health and Hospital Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023)....................................................................................20

*Henry v. Caruso*,
2014 WL 525032 (E.D. Mich. Feb. 7, 2014)......................................................7

*In re Jackson*,
637 B.R. 487 (Bankr. E.D. Mich. 2022)............................................................9

*Johnson v. Edinboro State Coll.*,
728 F.2d 163 (3d Cir. 1984) ..........................................................................16

*Kay v. Ehrler*,
499 U.S. 432 (1991)....................................................................................13

*Middlesex Cnty. Sewerage Authority v. National Sea Clammers Ass'n*,
453 U.S. 1 (1981)........................................................................................21

*In re: Nadja Yang*,
Case No. 3:26bk30507 (Bankr. N.D. Cal. Jun. 8, 2026) .....................................3

*Nat'l Collegiate Athletic Ass'n v. Tarkanian*,
488 U.S. 179 (1988)....................................................................................19

*In re Norton*,
867 F.2d 313 (6th Cir. 1989) ...................................................................15, 18

*Parker v. Boston Univ. (In re Parker)*,
334 B.R. 529 (Bankr. D. Mass. 2005) .......................................................10, 17

*Periera v. Chapman*,
92 B.R. 903 (Bankr. C.D. Cal. 1988) ....................22

*Pertuso v. Ford Motor Credit Co.*,
233 F.3d 417 (6th Cir. 2000) ....................8

*Potter v. City of Hanceville (In re Potter)*,
354 B.R. 301 (Bankr. N.D. Ala. 2006) ....................18

*In re Schooff*,
No. 17-57500-MBM, 2019 WL 642840 (Bankr. E.D. Mich. Feb. 13, 2019) ....................13

*In re Shrum*,
597 B.R. 845 (Bankr. E.D. Mich. 2019) ....................13

*In re Spencer*,
No. BT 22-01968, 2024 WL 2005546 (Bankr. W.D. Mich. May 6, 2024) ....................10, 12

*Springfield Hosp., Inc. v. Guzman*,
28 F.4th 403 (2d Cir. 2022) ....................15

*Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*,
315 F.3d 80 (2d Cir. 2002) ....................16

*Stuart v. City of Scottsdale (In re Stuart)*,
632 B.R. 531 (B.A.P. 9th Cir. 2021) (applying *Fulton* to a pre-petition garnishment), *aff'd*, No. 21-60063, 2023 WL 5011739 (9th Cir. Aug. 7, 2023) ....................10

*Toth v. Mich. State Hous. Dev. Auth.*,
136 F.3d 477 (6th Cir. 1998) ....................14, 15, 18

*TranSouth Fin. Corp. v. Sharon (In re Sharon)*,
234 B.R. 676 (B.A.P. 6th Cir. 1999) ....................8, 11

*Walker v. Fitzpatrick*,
814 Fed.Appx. 620 (2d Cir. 2020) ....................21

*Watts v. Pa. Hous. Fin. Co.*,
876 F.2d 1090 (3d Cir. 1989) ....................15

*In re Webb*,
472 B.R. 665 (B.A.P. 6th Cir. 2012) ....................................................................10

*West v. Atkins*,
487 U.S. 42 (1988)...................................................................................................19

*Wohleber v. Skurko (In re Wohleber)*,
596 B.R. 554 (B.A.P. 6th Cir. 2019) ....................................................................10

*Yang v. Lynch*,
Case No. 3:26ap3032 (Bankr. N.D. Cal. July 15, 2026) .......................................5

*Yang v. Regents of the Univ. of Mich.*,
Case No. 3:26cv7259 (N.D. Cal. July 15, 2026) ...................................................5

*United States ex rel. Yang v. Regents of the Univ. of Mich., et al.*,
Case No. 2:26-cv-11373 (E.D. Mich. April 27, 2026) ..........................................6

*In re: Yang*,
Case No. 3:26cv7302 (N.D. Cal. July 16, 2026) ...................................................5

*In re Yang*,
No. 26-30507 (Bankr. N.D. Cal.), Dkt. 24 ...........................................................11

*Zimmerman v. Bellows*,
988 F.Supp.2d 1026 (D. Minn. 2013)...................................................................22

**Statutes**

11 U.S.C. §§ 101–1532 (Bankruptcy Code)..........................................19, 20, 21, 22

11 U.S.C. § 362 ......................................................................................................7, 8, 21

11 U.S.C. § 362(a)(3).................................................................................................7, 8, 9

11 U.S.C. § 362(a)(6)......................................................................................................8, 9

11 U.S.C. § 362(c)(2)(B) ..................................................................................................11

11 U.S.C. § 362(k) .....................................................................................................*passim*

11 U.S.C. § 362(k)(1)......................................................................................................5, 7

11 U.S.C. § 366(b) ..........................................................................................................15

11 U.S.C. § 523(a)(8) .... 2

11 U.S.C. § 525 .... 15

11 U.S.C. § 525(a) .... *passim*

11 U.S.C. § 525(c) .... 15

11 U.S.C. § 525(c)(1) .... 15

15 U.S.C. §§ 1692–1692p (Federal Debt Collection Practices Act) .... 24

15 U.S.C. § 1692e .... 7, 24

15 U.S.C. § 1692f .... 7

42 U.S.C. § 1983 .... *passim*

42 U.S.C. § 1985 .... 21

FDCPA .... 24

M.C.L. §§ 445.251–.258 .... 23, 24

M.C.L. § 445.252 .... 23

M.C.L. § 445.252(a) .... 23, 24

M.C.L. § 445.252(e) .... 23

M.C.L. § 445.252(f)(i) .... 23, 25

M.C.L. § 445.252(f)(ii) .... 23, 25

**Other Authorities**

34 C.F.R. § 685.209 .... 1, 2

Fed. R. Civ. P. 12(b)(6) .... 7

**MEMORANDUM IN SUPPORT**

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff Nadja Yang is a student at the University of Michigan (the "University") who was on an authorized term of withdrawal as of the filing of the complaint. PageID.4. She had an unpaid balance with the University for tuition and fees.[1] PageID.6. On February 13, 2026, Ms. Yang wrote to the Student Loan Collections office for the University about her outstanding balance and a block on her enrollment. PageID.7-8. She proposed an "income-contingent repayment arrangement modeled on 34 C.F.R. § 685.209" (providing repayment plans for federal student loans). *Id.* Ms. Yang was directed to the Student Financial Services office. PageID.8. She contacted that office and received an automated response that she had an unpaid balance and that a hold would be placed on her account. *Id.*

On April 9, 2026, almost two months later, Ms. Yang contacted Student Financial Services again. *Id.* She was allegedly directed back to Student Loan Collections. *Id.* On April 15, 2026, Ms. Yang contacted Student Financial Services again to ask for an update from Student Loan Collections. *Id.* On April 21, 2026, Defendant Kathleen Chapman, a Collections Counselor in the Student Loan

[1] Since the filing of the complaint here, Ms. Yang has paid all past due amounts due and owing to the University and registered for Fall 2026 classes. Notably, the University was the sole creditor identified by Ms. Yang; thus, calling into question her ability to re-file bankruptcy even if she were to file in the appropriate jurisdiction.

Collections office, contacted Ms. Yang. PageID.6, 8. Chapman offered three options to settle the outstanding balance of $18,343.58, including a potential negotiated settlement. PageID.8-9. Ms. Yang offered $1,500 to settle the balance. PageID.9. On April 23, 2026, Chapman countered with an offer of $13,757.69. *Id.*

Ms. Yang responded that day; she restated her same offer and told Chapman that she believed the unpaid balance would be dischargeable in a Chapter 7 bankruptcy proceeding.[2] *Id.* Ms. Yang had not yet filed for bankruptcy, and the complaint contains no allegations that she had ever mentioned a potential future bankruptcy to University personnel before this point. The next day, Chapman restated her same counteroffer and told Ms. Yang that the hold would remain on her account until the balance was paid. PageID.9. On April 25, 2026, Ms. Yang withdrew her offers and offered to pay the University $1.00. *Id.*

On April 26, 2026, Ms. Yang wrote to Student Loan Collections, citing legal authorities under which she argued that the University withholding her transcript because of the balance was "an abusive practice." *Id.* Ms. Yang also reserved her rights under 11 U.S.C. § 362(k) to pursue a remedy for violations of an automatic stay in bankruptcy proceedings. *Id.* On May 14, 2026, the University designated the hold on Ms. Yang's account as a "Student Financial Hold," which prevented her

---

2 Ms. Yang's contentions notwithstanding, her ability to discharge her higher education debts is not at all clear given the provisions of 11 U.S.C. § 523(a)(8).

from registering for classes. *Id.* Ms. Yang still had not filed for bankruptcy.

Ms. Yang eventually filed for Chapter 7 bankruptcy on June 8, 2026, in the U.S. Bankruptcy Court for the Northern District of California. PageID.10.[3] The next day, Ms. Yang emailed Defendant Timothy G. Lynch, the Vice President and General Counsel for the University at the time. PageID.5, 10. Ms. Yang alleges that she informed Lynch of the bankruptcy filing and the automatic stay that it triggered and demanded that the University remove the hold on her account keeping her from registering. PageID.10.

On June 10, 2026, Ms. Yang called the University's Office of General Counsel and spoke to Defendant Denise Truesdell, a Senior Legal Assistant in the Office of the Vice President and General Counsel. PageID.5, 11. According to Ms. Yang, Truesdell informed Ms. Yang that the University would need to receive a mailed notice from the bankruptcy court before halting any collection efforts.[4] PageID.11. Ms. Yang responded that the stay takes effect from the point of filing, not when notice was received. *Id.* The call ended shortly thereafter.

---

[3] "Federal courts may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969) (collecting cases). The filings referenced in the complaint and subsequent proceedings in the California bankruptcy case, captioned *In re: Nadja Yang*, Case No. 3:26bk30507 (Bankr. N.D. Cal. Jun. 8, 2026), are the proper subject of judicial notice.

[4] While the University disputes Ms. Yang's factual allegations, they are taken as true for purposes of this motion to dismiss.

Then, Ms. Yang asserted that she called Student Loan Collections. *Id.* When she could not get ahold of anyone, she called Student Financial Services, where she spoke to a specialist who Ms. Yang alleges told her that she "'was not familiar with' the collections department's policy on the automatic stay," told Ms. Yang that the balance was no longer with Student Financial Services, and offered to transfer her back to Student Loan Collections. PageID.11-12. Ms. Yang asserts that she told the specialist that she believed the University was violating the bankruptcy stay and asked to speak to a manager. PageID.12. She then spoke to Defendant Sean Fritz, an Accounting Senior Manager, who allegedly told her that "he 'would need to check' on the University's policy regarding the automatic stay and did not want to give her 'any bad information.'" *Id.*

Later that afternoon (June 10, 2026), Fritz emailed Ms. Yang, stating that in light of the stay, she would be allowed to register for the next semester, but that she would need to pre-pay for the semester, and asked how many credits she planned to take so that he could provide an estimate. *Id.* Ms. Yang emailed in response citing 11 U.S.C. § 525(a) (Protection against discriminatory treatment), alleged that the University may have violated the bankruptcy stay by waiting for a court-mailed notice, and appended a preservation notice[5]. *Id.*

[5] It is worth noting that the communications with the University employees were either initiated by Ms. Yang or were responses to communications initiated by her.

On June 15, 2026, Ms. Yang moved for sanctions against the University for violating the automatic stay under 11 U.S.C. § 362(k)(1) in the California bankruptcy action. Before the court had addressed the motion, it dismissed the case for improper venue on June 23, 2026, because Ms. Yang did not live in the district where she filed for bankruptcy.

On or about June 29, 2026, Ms. Yang filed a motion to alter or amend the order dismissing the case for improper venue and a notice of appeal. On July 13, 2026, the Bankruptcy Court denied the motion to alter or amend the order dismissing the case, noting that it was "persuaded that it should deny the Motion for lack of jurisdiction."

Despite the dismissal and reaffirmation of the dismissal, on or about July 15, 2026, Ms. Yang filed an adversary action associated with the dismissed bankruptcy case against Lynch, alleging bankruptcy discrimination by a governmental unit and violations of the bankruptcy stay. *Yang v. Lynch*, Case No. 3:26ap3032 (Bankr. N.D. Cal. July 15, 2026). Ms. Yang's appeal of the dismissal of her bankruptcy case was docketed with the Northern District of California as of July 15, 2026. *Yang v. Regents of the Univ. of Mich.*, Case No. 3:26cv7259 (N.D. Cal. July 15, 2026). Notwithstanding the pending appeal, Ms. Yang filed a "Motion to Withdraw Reference of Sanctions Proceeding" from the bankruptcy case in the district court. *In re: Yang*, Case No. 3:26cv7302 (N.D. Cal. July 16, 2026). She has also since

moved for sanctions against counsel for Respondent, the University, and its law firm, Barnes & Thornburg LLP.[6]

Ms. Yang filed this current case on August 13, 2026, bringing claims relating to her bankruptcy proceedings. Each count fails to state a claim, and the Court should dismiss the complaint.

## II. LAW & ARGUMENT

### A. Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must take all factual allegations as true, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation omitted). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Ms. Yang is proceeding *pro se* here. When a plaintiff is *pro se*, "the court is required to liberally construe the complaint and hold it to a less stringent standard

[6] Defendants have also learned of a recently unsealed *Qui Tam* Action filed by Ms. Yang against the University. *United States ex rel. Yang v. Regents of the Univ. of Mich., et al.*, Case No. 2:26-cv-11373 (E.D. Mich. April 27, 2026).

than a similar pleading drafted by an attorney." *Henry v. Caruso*, 2014 WL 525032, at *3 (E.D. Mich. Feb. 7, 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Even so, "a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6). Meaning, a plaintiff still must allege a set of facts that would establish the material elements of a claim." *Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (citing *Twombly*, 550 U.S. at 556).

**B. Ms. Yang has failed to plausibly state a claim upon which relief can be granted.**

**1. The complaint pleads no violation of the automatic stay, no willful act by Truesdell or Lynch, and no injury (Count II).[7]**

Count II seeks damages under 11 U.S.C. § 362(k) from Defendants, Truesdell and Lynch. PageID.17. The statute gives a remedy to "an individual injured by any willful violation of a stay provided by this section." 11 U.S.C. § 362(k)(1). A plaintiff must therefore plead, and ultimately "prove by a preponderance of the evidence," three things: "that the stay imposed under § 362 was violated, that the violation was committed willfully and that plaintiff was injured by the violation." *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010).

The first element requires an act. Construing § 362(a)(3), the Supreme Court held that the stay "prohibits affirmative acts that would disturb the status quo" as of

[7] Count I of the complaint for False and Deceptive Representations and Unfair Practices in violation of 15 U.S.C. §§ 1692e and 1692f was only brought against Defendant Educational Computer Systems, Inc. and is not addressed in this motion.

the petition date and that "something more than merely retaining power is required." *City of Chicago v. Fulton*, 592 U.S. 154, 158-59, 161-62 (2021). The Sixth Circuit also requires "[s]omething more than mere contact" to state a claim under § 362(a)(6). *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000). The second element requires that the defendant "knew of the stay and violated the stay by an intentional act." *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999). The third element requires "a finding of actual injury," *Archer v. Macomb Cnty. Bank*, 853 F.2d 497, 500 (6th Cir. 1988) (quotation omitted), proven "with reasonable certainty" and not "based on conjecture," *Grine*, 439 B.R. at 469. The complaint pleads none of the three.

**a. No violation of the automatic stay occurred.**

The stay is a "stay" of "any act" to collect a claim or to exercise control over estate property. 11 U.S.C. § 362(a)(3), (6). The operative word is "act." *Fulton* holds that "mere retention" of property seized before the petition does not violate § 362(a)(3), because the stay reaches affirmative steps taken after the petition and not a creditor's failure to reverse a step it took before the case began. 592 U.S. at 158-59, 161-62. *Fulton* left the other subsections for another day, but the Sixth Circuit reads § 362(a)(6) the same way: "[s]omething more than mere contact must be alleged in order to state a claim under § 362." *Pertuso*, 233 F.3d at 423.

The complaint alleges two things about these defendants in the fifteen days

the stay existed. Lynch received an email on June 9, 2026. PageID.10. Truesdell, on a June 10 telephone call, purportedly told Ms. Yang that the office's procedure was to wait for notice mailed by the court before directing departments to stop collection activity, and ended the call. PageID.11. Neither is an act to collect anything. Neither defendant is alleged to have demanded payment, placed or enforced a hold, refused a registration request, or communicated with any University department about Ms. Yang's account. The two registration holds on her record were placed on February 19 and May 14, 2026, months before the June 8 petition, by departments in which neither defendant works. PageID.8-9.

Ms. Yang's theory is that the violation lay in not undoing those pre-petition holds the moment she sent her own notice, and that waiting for the court's notice was "the intentional act." PageID.18-19. *Fulton* rejected that theory under § 362(a)(3): the stay "halts any affirmative act that would alter the status quo," and it does not convert a creditor's failure to reverse a pre-petition measure into a violation. 592 U.S. at 158. Courts in this district apply the same principle under § 362(a)(6). "[M]erely adjourning a state court matter, or failing or refusing to cause a pending state court lawsuit to be closed or dismissed, without more, is not a violation of the automatic stay." *In re Jackson*, 637 B.R. 487, 488 (Bankr. E.D. Mich. 2022). Applying *Jackson*, the Western District of Michigan held that a public official who learned of a filing mid-hearing, paused, took no further collection step, and

"followed-up and confirmed the Debtor's bankruptcy filing" acted "entirely appropriate[ly]"; her conduct "merely maintained the status quo," which is what the stay exists to preserve. *In re Spencer*, No. BT 22-01968, 2024 WL 2005546, at *6-7 (Bankr. W.D. Mich. May 6, 2024); *accord Stuart v. City of Scottsdale (In re Stuart)*, 632 B.R. 531, 540-41 (B.A.P. 9th Cir. 2021) (applying *Fulton* to a pre-petition garnishment), *aff'd*, No. 21-60063, 2023 WL 5011739 (9th Cir. Aug. 7, 2023). The cases Ms. Yang quotes for an affirmative duty to "halt or reverse" pre-petition collection efforts, PageID.18, concern "garnishment of wages, repossession of automobile, foreclosure of a mortgage or a judgment lien," *Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 572 (B.A.P. 6th Cir. 2019) (quoting *In re Webb*, 472 B.R. 665 (B.A.P. 6th Cir. 2012), and *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mich. 2000)), measures that extract value from the debtor after the petition; in *Wohleber* the creditor and her counsel attended a post-petition contempt sentencing at which the debtor was jailed to coerce payment. A registration flag on a student account extracts nothing. *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 741 (6th Cir. 1992), which Ms. Yang also cites, PageID.17, involved a fresh post-petition request for a transcript and a fresh refusal; the court found the violation "not willful" and imposed no sanction. *Id.* at 742. *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529, 532, 536 (Bankr. D. Mass. 2005), which she also cites, PageID.17, involved a post-petition refusal to let the student register until the prior

year's tuition was paid. The complaint here pleads no post-petition request or refusal.

What the complaint pleads about the two days after Ms. Yang's notice is that Truesdell had "looked the case up" on June 9, PageID.11, verifying the filing, and that by the afternoon of June 10 the University had written, "[g]iven that filing, we will allow you to register," on pre-payment for the term. PageID.12. The complaint does not allege that Ms. Yang attempted to register between June 8 and June 23, or that any registration request was refused. The stay ended on June 23, 2026, when the bankruptcy court dismissed her case. 11 U.S.C. § 362(c)(2)(B); *Merchant*, 958 F.2d at 742; *In re Yang*, No. 26-30507 (Bankr. N.D. Cal.), Dkt. 24; *see id.*, Dkt. 42 at 1.

**b. Neither Truesdell nor Lynch committed a willful act.**

Willfulness is a quality of an act. The defendant must have "violated the stay by an intentional act," *Sharon*, 234 B.R. at 687, and must have "deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case," *Bello*, 612 B.R. at 395 (quotation omitted). Liability follows the act to the person who committed it. Even the courts that entertain § 362(k) claims against a creditor's employees hold that "the agent's individual liability rests on evidence demonstrating that he or she directly committed the act which violated the automatic stay," *In re Gammons*, No. 12-10362, Adv. No. 19-01017, 2020 WL 1547154, at *3 (Bankr. D.R.I. Mar. 31, 2020) (quotation omitted) (denying dismissal because the complaint alleged that the individual defendants themselves committed the violative acts), and

that an individual answers only where he "personally directed, authorized, or participated in the violation," *Hamby v. Fouts (In re Hamby)*, 646 B.R. 865, 877 (Bankr. N.D. Ga. 2022).

Even if describing the office's procedure could be read as an act, it was not a willful violation. Ms. Yang's own allegation is that Truesdell and Lynch did not act: the office "waits for notice mailed by the court before directing its departments to stop collection activity." PageID.11. Neither is alleged to have placed, maintained, or enforced the holds, which sit in other departments, PageID.8-9, and the duty she invokes, to reverse a pre-petition collection measure, runs to the creditor that imposed it. She cites no case, and we have found none, that imposes § 362(k) liability on an employee of an entity creditor for not instructing other departments to act. The Doe defendants are alleged to have "directed, approved, or implemented the procedure," PageID.6, with no facts about who they are or what any of them did. Those allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**c. The complaint pleads no injury or basis for punitive damages.**

Injury is an essential element of the claim, and a violation that causes no damages "is not actionable under § 362(k)." *Hamby*, 646 B.R. at 873; *Spencer*, 2024 WL 2005546, at *7; *Archer*, 853 F.2d at 500. The only injury Count II identifies is "costs in securing compliance and in this action." PageID.19. Those are the costs of

Ms. Yang's own correspondence with the University and of bringing this suit, and the complaint identifies no out-of-pocket expense among them. She is not a lawyer, so her time is not an attorney's fee, *Kay v. Ehrler*, 499 U.S. 432, 435 (1991), and a court applying § 362(k) awards a pro se debtor nothing for it, *In re Shrum*, 597 B.R. 845, 857 (Bankr. E.D. Mich. 2019). The complaint pleads no other loss: no class missed, no term lost, and no payment made during the fifteen days the stay existed.

The demand for punitive damages also fails. Punitive damages under § 362(k) require "egregious, vindictive, or intentionally malicious" conduct, *In re Schooff*, No. 17-57500-MBM, 2019 WL 642840, at *3 (Bankr. E.D. Mich. Feb. 13, 2019) (quotation omitted), by a defendant who "acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so," *Bello*, 612 B.R. at 396 (quotation omitted); *see Archer*, 853 F.2d at 500 (punitive damages deter "deliberate and repeated violations"). According to the complaint, the University verified the filing and told Ms. Yang within a day that she could register. Nothing in it approaches that standard. The Court should dismiss this claim.

**2. The University did not violate § 525(a), and Fritz is entitled to qualified immunity regardless (Count III).**

Under Count III, Ms. Yang sues Sean Fritz, an Accounting Senior Manager in Student Financial Services, individually under 42 U.S.C. § 1983 for damages, on the theory that his June 10, 2026 email violated 11 U.S.C. § 525(a). PageID.5, 19-

21. The email said: "Given that filing, we will allow you to register[;] however, we will require pre-payment for the term," and asked how many credits Ms. Yang planned to take so that an estimate could be provided. PageID.12. A § 525(a) claim requires that a governmental unit denied, revoked, conditioned, or discriminated with respect to "a license, permit, charter, franchise, or other similar grant," and did so "solely because" of the bankruptcy or the non-payment of a dischargeable debt. 11 U.S.C. § 525(a); *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 107 (4th Cir. 2006). A § 1983 claim built on § 525(a) rises and falls with the predicate. *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th Cir. 1998) ("Since violation of § 525(a) was the predicate for plaintiff's claim brought under 42 U.S.C. § 1983, no relief is available under § 1983."). Here, the predicate fails, and Fritz is immune from a damages suit in any event.

#### a. Registration for a coming term is not a "license, permit, charter, franchise, or other similar grant."

The Sixth Circuit reads § 525(a) according to its terms. The items it enumerates "are benefits conferred by government that are unrelated to the extension of credit," and "the target of § 525(a) is government's role as a gatekeeper in determining who may pursue certain livelihoods." *Toth*, 136 F.3d at 480. The statute "should not be transformed by employing an expansive understanding of the 'fresh start' policy to insulate a debtor from all adverse consequences of a bankruptcy filing or discharge," and "[a] reckoning of an applicant's financial responsibility is an

essential part of any lender's evaluation" of an application for credit. *Id. Accord Watts v. Pa. Hous. Fin. Co.*, 876 F.2d 1090, 1093-94 (3d Cir. 1989) (enumerated items "are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor"); *In re Goldrich*, 771 F.2d 28, 30-31 (2d Cir. 1985), superseded by statute on other grounds, as recognized in *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418-19 (2d Cir. 2022).

Letting a student attend a term and billing her afterward is an extension of credit, and requiring payment first is a refusal to extend it. A governmental unit's refusal to extend new credit does not violate § 525(a). *Elter v. Great Lakes Higher Educ. Corp. (In re Elter)*, 95 B.R. 618, 620-22 (Bankr. E.D. Wis. 1989) (state agency that was "only refusing to authorize future credit" to a debtor, admittedly because of a discharged debt, did not violate § 525(a); "a college education is a privilege and an advantage"); *Goldrich*, 771 F.2d at 30-31. When Congress wanted § 525 to reach educational credit, it said so: § 525(c) forbids discrimination in student loans and grants, and reaches nothing else. 11 U.S.C. § 525(c)(1). Even a utility may condition continued service to a debtor on "adequate assurance of payment, in the form of a deposit or other security." 11 U.S.C. § 366(b). And the Sixth Circuit has held that § 525(a) "does not require the state to ignore the prior existence of a bankrupt's debt in all circumstances," *In re Norton*, 867 F.2d 313, 316-17 (6th Cir. 1989); "Congress has evinced a clear intent to permit the imposition of financial responsibility

requirements, so long as they are not discriminatorily applied to bankrupts." *Duffey v. Dollison*, 734 F.2d 265, 273 (6th Cir. 1984).

Registration is no closer to the enumerated grants. A semester of undergraduate instruction is not a governmental license to pursue a livelihood; it is a service that private institutions sell on the same commercial terms, including payment in advance. *See Golliday v. City of Benton Harbor (In re Golliday)*, 216 B.R. 407, 410 (Bankr. W.D. Mich. 1998) (declining to "stretch" the phrase beyond the enumeration). The transcript cases Ms. Yang invokes, PageID.20, concern a record of work already done that only the issuing institution can supply, withheld to collect a pre-petition debt, which is why courts have treated the withholding as an act to collect. *Merchant*, 958 F.2d at 741. The Second Circuit's test for an "other similar grant" asks whether the interest is "unobtainable from the private sector and essential to a debtor's fresh start," which is why it extended the phrase to a public-housing lease and named a "state university transcript" as an example. *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 90 (2d Cir. 2002). A term of instruction is neither: private institutions sell it, and it is "a privilege and an advantage," not a vital need. *Elter*, 95 B.R. at 622. The Third Circuit rejected a § 525(a) claim against a state college that withheld a graduate's transcript over an undischarged loan. *Johnson v. Edinboro State Coll.*, 728 F.2d 163, 165-66 (3d Cir. 1984). Ms. Yang cites no case holding that enrollment in future classes is a "grant"

within § 525(a), and we have found none.

Fritz's email did not withhold anything Ms. Yang had earned, and he did not condition registration on payment of the prior balance. He told her that she could register and asked her to pay for the coming term before she took it. PageID.12. That is the line between this case and the ones she invokes. In *Merchant* the school withheld a transcript to collect a pre-petition default. 958 F.2d at 741. In *Parker* the university refused to let the student register until the prior year's tuition was paid. 334 B.R. at 532, 536. Fritz did neither. By Ms. Yang's own account, the University "typically" requires the prior balance to be resolved before registration and, because of her filing, did not require it of her. PageID.12. Section 525(a) does not convert that accommodation into a federal tort against the manager who wrote the email, and the Court should dismiss this claim.

**b. Fritz is entitled to qualified immunity.**

Even if Ms. Yang could plead a § 525(a) violation, Fritz is entitled to qualified immunity from damages. Qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A right is clearly established only when "existing precedent [has] placed the statutory or constitutional question beyond debate," and the Supreme

Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.* at 741-42. The plaintiff bears the burden. A defendant who invokes qualified immunity "is entitled to dismissal before the commencement of discovery" unless the allegations state a claim that the defendant violated clearly established law, which the Court may address first. *Crawford v. Tilley*, 15 F.4th 752, 760, 763-65 (6th Cir. 2021) (quotation omitted).

No precedent placed the question here beyond debate. Ms. Yang identifies no decision holding that registration for classes is a "license, permit, charter, franchise, or other similar grant," or that a public university violates § 525(a) by requiring a debtor-student to pay in advance for a coming term, and we have found none. The controlling authority in this circuit points the other way. *Toth*, 136 F.3d at 480; *Norton*, 867 F.2d at 316-17; *Duffey*, 734 F.2d at 273. Ms. Yang's best case, *Potter v. City of Hanceville (In re Potter)*, 354 B.R. 301, 307-14, 321 (Bankr. N.D. Ala. 2006), found a § 525(a) right clearly established under the statute's express employment clause, on a summary-judgment record with witness testimony that the officials said they were replacing the plaintiff because of his bankruptcy. Ms. Yang's theory depends on two propositions no court has adopted. The first would treat course registration as a "license, permit, charter, franchise, or other similar grant." The second would treat a pre-payment requirement for a future term as discrimination under § 525(a). Ms. Yang can identify a clearly established right only

by describing it at the level of generality *al-Kidd* forbids. The Fifth Circuit granted qualified immunity to university regents and a university president on a § 1983 claim invoking § 525(a) where the statute's application to the debt was "not yet settled." *State of Tex. ex rel. Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 819 & n.6 (5th Cir. 1998). The declaratory relief Ms. Yang also seeks against Fritz, PageID.28-29, fails with the predicate: the complaint states no § 525(a) violation, and it alleges no continuing conduct by Fritz to declare unlawful. The injunction she seeks against him, PageID.31, also fails: the only conduct alleged is one email on June 10, 2026, and nothing ongoing is pleaded.

**3. The Bankruptcy Code's "comprehensive enforcement scheme" precludes Ms. Yang's § 1983 claim (Count IV).**

Count IV alleges a conspiracy by Defendants to violate 42 U.S.C. § 1983, which provides a private cause of action for violations of an individual's constitutional or statutory rights. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

State university employees can act under color of state law. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 183 (1988). And § 1983 claims apply to violations of rights created by statute, which may include violations of the Bankruptcy Code. *See In re Coats*, 168 B.R. 159, 167 (Bankr. S.D. Tex. 1993). But

"[e]ven if a statutory provision unambiguously secures rights, a defendant 'may defeat t[he] presumption by demonstrating that Congress did not intend' that § 1983 be available to enforce those rights." *Health and Hospital Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 186 (2023) (quoting *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005)). To discern this intent, courts look to whether the statute creating the right expressly forbids § 1983 or whether it implicitly precludes § 1983. The Bankruptcy Code does not explicitly preclude § 1983. The question, then, is whether the Bankruptcy Code implicitly precludes § 1983. It does.

The key inquiry in whether a statute implicitly precludes § 1983 is whether the statute has created "'a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *Rancho Palos*, 544 U.S. at 120). A typical indication of preclusion and incompatibility is when there is "an express, private means of redress in the statute itself," as "'[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Rancho Palos*, 544 U.S. at 121 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). To hold otherwise would allow a plaintiff to circumvent a more restrictive and narrower statutory remedy through the use of § 1983, thereby nullifying the statute. "Thus, the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it

would not." *Id.*; *see also Middlesex Cnty. Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) (explaining that "when a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.") (internal quotation omitted).

Furthermore, when a plaintiff fails to establish a § 1983 claim, a conspiracy claim predicated on the same allegations must also fail. *Walker v. Fitzpatrick*, 814 Fed.Appx. 620, 625 (2d Cir. 2020) (quoting *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009)). It does not matter whether the claim is styled as a conspiracy to interfere with civil rights claim under § 1985, or a civil conspiracy claim derived from alleged violations of § 1983. *Compare Conrad v. Mich. Dep't of Corr.*, 1992 WL 547168, at *3 (W.D. Mich. Oct. 5, 1992) (quoting *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989)) *with Walker*, 814 Fed.Appx. at 625.

The Bankruptcy Code contains all the traditional indicia that it implicitly precludes a § 1983 claim. The procedure provided is thorough, so much so that there is a parallel federal court system dedicated only to adjudicating bankruptcies. The automatic stay provided in 11 U.S.C. § 362, which Ms. Yang alleges Defendants violated, outlines the procedure that a plaintiff must follow to bring an action based on an alleged violation. It also provides damages depending on whether the violation was willful. *See* 11 U.S.C. § 362(k). Because the Bankruptcy Code provides a

comprehensive enforcement scheme and allowing the use of § 1983 would be incompatible with the procedure and remedies outlined in that scheme, the Court should hold that it implicitly precludes bringing a parallel claim under § 1983. Although neither the Supreme Court nor the Sixth Circuit has addressed this issue specifically, "[s]everal courts have recognized that 11 U.S.C. § 362(k) 'provides an exclusive and comprehensive enforcement mechanism' for violations of the automatic stay that supersedes relief through § 1983." *Zimmerman v. Bellows*, 988 F.Supp.2d 1026, 1032 (D. Minn. 2013) (quoting *Chitty v. Nye Cnty. Sheriff's Dep't*, 46 Fed.Appx. 526, 526 (9th Cir. 2002)); *see also, e.g.*, *In re Coats*, 168 B.R. at 167; *Periera v. Chapman*, 92 B.R. 903, 908 (Bankr. C.D. Cal. 1988).

Ms. Yang has alleged no facts relating to her § 1983 claim apart from the alleged violation of the § 362. Allowing her § 1983 claim to proceed here would circumvent the Bankruptcy Code's procedures and remedies for violating a stay. Because she has an exclusive and comprehensive enforcement mechanism through the Bankruptcy Code and the remedies it provides, her § 1983 claim is precluded.[8] And because her § 1983 claim is precluded, it fails as a matter of law, and any conspiracy claim also fails. The Court should dismiss this claim.

**4. Ms. Yang has failed to state a claim for prohibited collection**

---

[8] Even if Ms. Yang's § 1983 claim was not precluded and she could state a claim, Defendants would be entitled to qualified immunity for the same reasons explained in the section above regarding Ms. Yang's § 525(a) claim.

**practices (Count V).**

In Count V of her complaint, Ms. Yang brings a claim under M.C.L. § 445.252 of the Michigan Regulation of Collection Practices Act ("MRCPA") against Defendants, Chapman and Does 1-10. Ms. Yang alleges that Chapman directed her to an online account portal that listed the balance that Ms. Yang owed the University under "Student Loans & Receivables" and contained other statements implying that the balance owed was a "loan." PageID.26. Because the status of a balance due as a "loan" could affect whether it can be discharged in bankruptcy proceedings, Ms. Yang argues that characterizing the balance as such was a prohibited collection practice. PageID.26-27. Even taking the allegations as true, this claim still fails.

Ms. Yang cites three provisions of the MRCPA which prohibit:

> (a) Communicating with a debtor in a misleading or deceptive manner,
> . . .
> (e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.
> (f) Misrepresenting in a communication with a debtor 1 or more of the following:
>> (i) The legal status of a legal action being taken or threatened.
>> (ii) The legal rights of the creditor or debtor.

PageID.26; M.C.L. § 445.252(a), (e), and (f)(i)-(ii).

The broader context of the statute suggests that the alleged "misrepresentations" in this case are simply not the types contemplated by the MRCPA. Ms. Yang omitted the full text in her complaint, but the second half of

M.C.L. § 445.252(a) is particularly telling with its example of misleading or deceptive communications: "such as using the stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau." Additionally, courts "generally analyze MRCPA claims in the same manner as FDCPA [Federal Debt Collection Practices Act] when based on the same factual allegation, as the language in the MRCPA is 'very similar' to the language in the FDCPA." *Adams v. Seterus, Inc.*, 2019 WL 4735157, at *5 (E.D. Mich. Sept. 27, 2019) (quoting *Gamby v. Equifax Info. Servs., LLC*, 462 Fed.Appx. 552, 556 n.6 (6th Cir. 2012)).

Ms. Yang alleges that in late April, she informed Chapman of her belief that the debt she owed would be dischargeable in bankruptcy. PageID.27. Chapman responded in mid-May, demanding payment in full. *Id.* Ms. Yang alleges a misrepresentation because Chapman disagreed with Ms. Yang's legal conclusion about what a bankruptcy court might do in a potential future case. But this is a determination for a bankruptcy court. Implied in the complaint is that Chapman should have agreed with Ms. Yang's legal conclusion and discharged the debt prior to any bankruptcy filing or, at minimum, removed the hold on Ms. Yang's account.

Even taking the facts alleged as true, the statements at issue were not misrepresentations at all, much less the type contemplated in the MRCPA or the FDCPA. *See* M.C.L. § 445.252(a) and 15 U.S.C. § 1692e. To hold otherwise would

create a cause of action any time a creditor did not proactively discharge a debt because a debtor claimed that they *might* file for bankruptcy later.

Ms. Yang has also alleged a violation of M.C.L. § 445.252(f)(i)-(ii), which involve misrepresentations regarding "[t]he legal status of a legal action being taken or threatened" or "[t]he legal rights of the creditor or debtor." But Chapman never made any representations about any legal actions that the University was considering or Ms. Yang's rights as a debtor. To the contrary, the complaint is replete with examples of Ms. Yang threatening (and taking) legal action against Defendants, regardless of their merits. The Court should dismiss this claim.

## III. CONCLUSION

Ms. Yang has failed to state a claim upon which relief can be granted, and the Court should dismiss each claim against Defendants, Truesdell, Lynch, Fritz, and Chapman.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Lisa D. Starks*
Lisa D. Starks (P-78128)
**Barnes & Thornburg LLP**
171 Monroe Ave. NW, Ste. 1000
Grand Rapids, MI 49503
Phone: (260) 425-4627
Facsimile: (260) 424-8316
Lisa.Starks@btlaw.com

*/s/ Robert C. Folland*
Robert C. Folland (Ohio Bar No. 0065728)
**Barnes & Thornburg LLP**
41 S. High St., Ste. 3300
Columbus, OH 43215
Phone: (614) 628-0096
Facsimile: (614) 628-1433
Rob.Folland@btlaw.com
*Attorneys for Defendants, Denise Truesdell, Timothy G. Lynch, Sean Fritz, and Kathleen Chapman*